IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TARA SAVANAH MACAULAY, <br> as natural child of Eric N. Macaulay, deceased, <br> and as Administratrix of the Estate of <br> Eric N. Macaulay and <br> ERICA TAYLOR MACAULAY, <br> as natural child of Eric N. Macaulay, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CAMDEN COUNTY, GEORGIA, CITY OF <br> ST. MARYS, GEORGIA, <br> JESS MARTINEZ, M.D., and <br> SOUTHEAST GEORGIA HEALTH <br> SYSTEM, CAMDEN CAMPUS a/k/a KINGS <br> BAY COMMUNITY HOSPITAL, INC., and <br> JOHN DOE 1-6, <br><br> Defendants. | § <br> § <br> § <br> § Civil Action Number: <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

# COMPLAINT

## I.   JURISDICTION AND VENUE

1.

This is an action under the Civil Rights Act of 1871 and 1991, and in particular 42 U.S.C §1983, to secure redress for the violation, by Defendants, of Plaintiffs' Constitutional and Civil rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

2.

The Court has jurisdiction of this action under 28 U.S.C.A. §§1331 (federal question) and 1343(3), (4) (civil rights).

1

3.

This Court also has supplemental jurisdiction over Plaintiffs' claims arising under Georgia law pursuant to 28 U.S.C. §1367. Such claims arise out of the same core nucleus of operative facts, and are part of the same case or controversy as Plaintiff's original claim. Therefore, the Court may properly exercise jurisdiction over such claims.

4.

The Defendants are citizens of and/or residents of the Southern District of Georgia, and the events giving rise to this action occurred within the Southern District of Georgia. Therefore, venue is properly laid in this Honorable Court. 28 U.S.C.A. §1391.

## II. PARTIES

5.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 4 above as if restated and realleged in full herein.

6.

The Decedent, Eric N. Macaulay ("Decedent"), died intestate on January 28, 2009.

7.

Plaintiff Tara Savanah Macaulay ("Tara") is the natural child of the Decedent.

8.

Tara is the Administratrix of the Estate of Eric N. Macaulay, deceased. A copy of the Letters of Administration is attached hereto as Exhibit "A".

9.

Plaintiff Erica Taylor Macaulay ("Erica") also is the natural child of the Decedent.

2

10.

Defendant Camden County, Georgia ("Defendant Camden") was and is a County organized and existing under the laws of the State of Georgia. Defendant Camden is a person within the meaning of 42 U.S.C. §1983 and amenable to claims under Federal and Georgia law. At all times relevant hereto, Defendant Camden and its officers, agents, and employees were acting and operating under color of State law.

11.

Defendant St. Marys, Georgia ("Defendant St. Marys") was and is a municipality organized and existing under the laws of the State of Georgia. St. Marys, Georgia is a person within the meaning of 42 U.S.C. §1983 and amenable to claims under Federal and Georgia law. At all times relevant hereto, Defendant St. Marys and its officers, agents, and employees were acting and operating under color of State law.

12.

Defendant Jess Martinez, M.D. ("Defendant Martinez") is a medical doctor. Defendant Martinez resides and practices medicine within the Southern District of Georgia. Defendant Martinez is employed by Defendant Southeast Georgia Health System, a/k/a Kings Bay Community Hospital, Inc. ("Defendant Hospital").

13.

Defendant Southeast Georgia Health System, a/k/a Kings Bay Community Hospital, Inc. ("Defendant Hospital") is a hospital corporation doing business and maintaining an office in Camden County, Georgia.

14.

John Does 1-6 are agents, representative, and/or employees of Defendant Camden and/or Defendant St. Marys, whose identity currently is unknown. Said individuals are liable for Plaintiffs' damages individually and in their official capacity.

### III.    FACTS

15.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 14 above as if restated and realleged in full herein.

16.

On January 27, 2009, Decedent Eric N. Macaulay was alone at the home of his father, Jack Macaulay ("Jack"), in St. Marys, Camden County, Georgia. At the time, Jack had gone to a doctor's appointment in Florida.

17.

Upon Jack's return home, he observed that Decedent was acting strangely; Decedent advised his father that he had taken approximately twenty-two (22) Morphine tablets and some Xanax.

18.

Jack immediately called Camden County 911 and requested emergency assistance for Decedent.

4

19.

At approximately 7:31 p.m., the St. Marys Police Department (Defendant St. Marys) and Camden County Fire Department (Defendant Camden) responded to Jack's residence, without activation of lights and sirens.

20.

Upon arrival at the scene, agents of Defendant St. Marys and Defendant Camden were met by Jack, who advised them that Decedent had stated that he had taken approximately ten (10) Xanax pills and twenty-two (22) Morphine pills. Jack stated that actually twenty-seven (27) pills were missing from the Morphine bottle.

21.

Agents of Defendant St. Marys and Defendant Camden thereafter identified the pills by the prescription bottles present at the scene.

22.

Agents of Defendant St. Marys and Defendant Camden noted that, while Decedent was sitting up and eating dinner, his speech was thick and slurred.

23.

Agents of Defendant St. Marys and Defendant Camden reported that they spoke with Decedent, who claimed to have taken the medication at approximately 1:00 p.m. – 1:30 p.m. that afternoon.

24.

Thereafter, Agents of Defendant St. Marys and Defendant Camden conferred by telephone with Defendant Martinez at Defendant Hospital.

5

25.

Agents of Defendant St. Marys and Defendant Camden conveyed the information provided by Jack concerning the quantity of medication Decedent had taken.

26.

Defendant Martinez offered the opinion, sight unseen, and without taking any medical history or performing any examination, that if Decedent had taken that amount of medication at the time stated, Decedent would have died prior to the Defendants' arrival.

27.

Defendant Martinez did not ask Defendant St. Marys or Defendant Camden to transport Decedent to Defendant Hospital for examination or treatment. Defendant Martinez did not recommend or even suggest transporting Decedent to Defendant Hospital for further evaluation.

28.

Defendant Martinez did not speak to Jack or Decedent prior to rendering his opinion.

29.

Defendant Martinez was acting during the course and scope of his employment with Defendant Hospital at the time his opinion was conveyed.

30.

During the conversations between the agents of Defendants St. Marys and Camden County and Decedent, it was noted that Decedent had several coughing episodes and was having difficulty staying awake and swallowing food. Decedent visibly continued to decline. Decedent was noticeably reeling, breathing fast, and having difficulty with his chest. By this time, Decedent was obviously suffering the effects of a drug overdose and incapable of obtaining treatment for himself.

31.

Defendant St. Marys and Defendant Camden, relying at least in part on the medical opinion of Defendant Martinez and Defendant Hospital, stated to Jack that Decedent did not require medical attention, ignoring the fact that Decedent was in mortal distress which required immediate medical care.

32.

Jack repeatedly and continuously begged for aid for his son.

33.

Jack was advised to monitor Decedent and to call 911 if there were further signs of distress.

34.

Jack's repeated requests for further treatment for Decedent were refused, and Defendant St. Marys and Defendant Camden left the scene without taking Decedent to the hospital.

35.

A family friend, Ben Casey ("Ben"), and Jack stayed with Decedent after Defendants left. Agents of Defendant St. Marys and Defendant Camden told Ben and Jack just to let Decedent sleep it off.

36.

Sometime between 11:30 p.m. and 12:00 a.m., Jack spoke to Decedent. Thereafter, he went to his room. Jack returned to check on Decedent at approximately 12:45 a.m.

7

37.

Jack found Decedent on the couch in the living room. Decedent was pale in color, unresponsive, and not breathing.

38.

At approximately 12:51 a.m., Jack placed another 911 call to report that he believed Decedent was dead. Jack stated that Decedent was not breathing and was cold to the touch. Jack was unable to move Decedent in an effort to initiate CPR.

39.

Defendant St. Marys and Defendant Camden again responded to the scene. At the time of their arrival, Decedent was not breathing, had no carotid pulse, had no breath sounds, and no heart sounds were present. CPR was attempted with no success.

40.

Defendant Martinez again was called and on this occasion advised Defendants to cease rescue efforts and pronounce death at 1:07 a.m.

41.

On their second trip to the scene, Defendant St. Marys and Defendant Camden verified that twenty-seven (27) pills were missing from Jack's Morphine prescription bottle.

42.

On or around January 21, 2010, a formal demand was made on Defendants. A copy of said demand is attached hereto as Exhibit "B".

43.

Said demand was rejected.

44.

The autopsy performed on Decedent has revealed that Decedent died of a Morphine overdose.

## IV. CAUSES OF ACTION

A. VIOLATION OF CIVIL RIGHTS - §1983

45.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 44 above as if restated and realleged in full herein.

46.

At all time relevant hereto, Defendants were acting under color of State law.

47.

On the date in question, Defendants were contacted and notified that the Decedent was suffering from a serious, life-threatening medical condition.

48.

Defendants were aware of the Decedent's substantial medical condition and were aware that if left unattended, Decedent faced a substantial risk of serious harm.

49.

Notwithstanding their knowledge and awareness of the serious and life-threatening condition, Defendants failed and refused to provide Decedent with proper and necessary medical care and treatment.

50.

The serious, life-threatening condition afflicting the Decedent was so obvious that even a lay person easily would have recognized the necessity for immediate medical care.

9

51.

The care provided to the Decedent was grossly inadequate, evidenced a decision to take an easier but less efficacious course of treatment, and was so cursory as to amount to no treatment at all.

52.

Defendants' failure to provide necessary and appropriate care resulted in an unnecessary and wanton infliction of pain and suffering, and eventually death.

53.

The Defendants acted in bad faith and with deliberate indifference to Decedent's medical needs.

54.

Through their acts and omission, Defendants blatantly ignored and disregarded Decedent's serious and life threatening medical condition, and completely failed to provide that aid, care, and medical attention sought by Jack Macaulay through his 911 call.

55.

Decedent's death could have been prevented through even a modicum of care and attention. That care was not provided.

56.

Through their acts and omission, Defendants acted wantonly, willfully, intentionally, and recklessly, thereby causing Decedent's death.

57.

As a direct and proximate result of the Defendants' failure to provide necessary and adequate care, Decedent died. See Exhibit "C".

58.

Plaintiffs are entitled to recover damages based upon the Defendants' violation of the Decedent's constitutional and civil rights.

B. STATE LAW CLAIMS

59.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 58 above as if restated and realleged in full herein.

60.

On the date in question, Jack contacted Defendants and requested emergency medical care for the Decedent based upon an apparent overdose of narcotic medication.

61.

Although Defendants responded, Defendants failed and refused to provide the requested care and treatment and failed and refused to take Decedent to the hospital or emergency room for further evaluation and treatment.

62.

The Defendants' acts and omissions were intentional, wanton, wilfull, and reckless, and taken in bad faith.

63.

As a direct and proximate result of the wrongful acts and omissions of the Defendants, the Decedent died from a drug overdose, the emergency which had prompted Jack to request Defendants' assistance. See Exhibit "C".

64.

As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiffs have suffered damages and are entitled to redress.

C. DAMAGES

65.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 64 above as if restated and realleged in full herein.

66.

As a direct and proximate result of the Defendants' acts and omissions, Decedent left this life and Plaintiffs are entitled to recover the full value of the Decedent's life, based on said wrongful death.

67.

As a direct and proximate result of the Defendants' acts and omissions, Plaintiffs have suffered damages and are entitled to recover funeral and burial expenses.

68.

Prior to his death, Decedent suffered conscious pain and suffering which authorize a recovery of general damages in an amount to be determined by the enlightened conscience of the jury.

69.

As a direct and proximate result of the Defendants' acts and omissions, Plaintiffs have suffered damages and are entitled to recover reasonable and necessary medical and other expenses.

70.

As a direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiffs have suffered damages and are entitled to recover such damages pursuant to 42 U.S.C.A. §1981(b), including compensatory damages and punitive damages.

### D. ATTORNEYS FEES AND EXPENSES OF LITIGATION – STATE LAW

71.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 70 above as if restated and realleged in full herein.

72.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, justifying an award of attorneys fees and expenses of litigation pursuant to O.C.G.A. §13-6-11.

### E. ATTORNEYS FEES AND EXPENSES OF LITIGATION – §1988

73.

Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 72 above as if restated and realleged in full herein.

74.

Plaintiffs are entitled to recover attorneys fees and expenses of litigation pursuant to 42 U.S.C.A. §1988, based upon the Defendants' violation of 42 U.S.C. §1983.

WHEREFORE, Plaintiffs pray as follows:

(a) That process issue;

(b) That Defendants be served as provided by law;

13

(c) That they have a trial by jury of all issues triable by jury;

(d) That they recover damages for the full value of the life of Decedent in such an amount in excess of $500,000.00, as will be established by the evidence;

(e) That they recover general damages for Decedent's personal injuries and pain and suffering prior to death in the amount of $1,000,000.00;

(f) That they recover punitive damages in such an amount in excess of $1,000,000.00, as will be established by the evidence;

(g) That they recover reasonable and necessary expenses including burial, medical, funeral, and other expenses;

(h) That they recover costs, including reasonable attorneys fees; and

(i) That they recover such other and further relief as the Court deems just and equitable.

Respectfully submitted this 28th day of January, 2011.

                CATTS AND BROOKS

                /s/ Todd C. Brooks_____
                Todd C. Brooks
                Georgia Bar Number: 085550
                toddbrooks@cattslaw.com
                Austin E. Catts
                Georgia Bar Number: 116900
                aec@cattslaw.com

                *Attorneys for Plaintiffs*

1529 Reynolds Street
Brunswick, Georgia 31520
912-261-8448 (telephone)
912-261-7919 (facsimile)